**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____x

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **-v-**                                          **Case No. 15-CR-628 (CBA)**

**QIAN ZHENG, et al.**

        **Defendant.**
_____x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT QIAN ZHENG'S PRETRIAL MOTIONS

Respectfully submitted,

_____/s/_____

James Kousouros, Esq.
_Attorney for Qian Zheng_
260 Madison Avenue, 22nd Floor
New York, New York 10016
Phone: (212) 532-1934
Fax: (212) 532-1939
James@Kousouroslaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITES ............................................................................................ iii

LIST OF EXHIBITS ..................................................................................................... vi

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

   *The Zheng Organization*............................................................................................ 2

ARGUMENT .................................................................................................................. 3

   The Trial of Qian Zheng Should Be Severed From the Trials of Guifu Gu and Xue Jiang Gao, Or, In the Alternative, More Thorough Redaction Must Be Ordered. ....................................... 3

   The Government Should Provide a Bill of Particulars.............................................. 7

   The Government Should Be Required to Provide 404(b) Evidence Sixty Days Before Trial.. 13

   The Government Should Disclose All Exculpatory and Impeachment Material Forthwith. .... 17

   Disclosure of Statements of Interviewed Individuals as Brady Material ................................ 24

   The Government Should Be Directed to Provide Notice of Any Expert Testimony that it May Seek to Elicit at Trial............................................................................ 27

   The Government Should Be Compelled to Provide a Witness List Prior to Trial ................... 29

   Permitting the Defendant to File Additional Motions Which May Arise from the Requests Made Herein ............................................................................................ 30

   CONCLUSION.......................................................................................................... 30

## **TABLE OF AUTHORITES**

**Cases**

Brady v. Maryland, 373 U.S. 83, 87 (1963) ................................................ 17, 18, 25, 26

Bruton v. United States, 391 US 123 (1968) ..................................................... 1, 3, 4

Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980)................................................. 16

Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714 (1987) ............................................. 3

Giglio v. United States, 405 U.S. 150, 154 (1972) ......................................... 18, 26

Huddleston v. United States, 485 U.S. 681 (1988)......................................... 14, 15

Kyles v. Whitley, 514 U.S. 419, 434-35 (1995) .............................. 18, 24, 25, 26

United States v. Abelis, 146 F.3d 73, 82 (2d Cir. 1998).......................................... 8

United States v. Agurs, 427 U.S. 97, 108 (1976) .................................................. 26

United States v. Aliperti 867 F. Supp. 142 (E.D.N.Y. 1994) ..................................... 9

United States v. Bagley, 473 U.S. 667, 682 (1985)..................................... 17, 18, 25

United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) ................................ 7

United States v. Brown, 699 F.2d 585 (2d Cir. 1983) ............................................. 4

United States v. Bruno, 383 F.3d 65 (2004) ........................................................ 9

United States v. Bruno, 873 F.2d 555 (2d Cir. 1989) ............................................. 8

United States v. Burgio, 279F. Supp. 843, 846 (S.D.N.Y. 1968) ............................. 8

United States v. Cannone, 528 F.2d 296, 301 (2d Cir. 1975).................................. 29

United States v. Castillo, 924 F.2d 1227, 1231 (2d Cir. 1991)................................ 28

United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001)..................................... 19

United States v. Covelli, 210 F. Supp. 589 (N.D. Ill. 1962).................................... 7

United States v. Crisona, 271 F. Supp. 150 (S.D.N.Y. 1967)................................... 7

United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992) ....................................... 27

United States v. Danzey, 594 F.2d 905, 917-918 (2d Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179 (1979) .......................................................................................... 4

United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988)........................................ 8

United States v. Feola, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), aff'd 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989) ......................................................... 8

United States v. Feola, 651 F. Supp. 1068, 133 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989), cert denied, 493 U.S. 834 (1989) ................................................. 13

United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).................................. 16

United States v. Fischback and Moore, Inc., 576 F. Supp. 1384, 1397-98 (W.D. Pa. 1983) ....... 16

United States v. Foskey, 636 F.2d 517, 526 n.8 (D.C. Cir. 1980)............................. 16

United States v. Gallo, 654 F. Supp. 463, 480 (E.D.N.Y. 1987) ............................. 29

United States v. Goldman, 439 F. Supp. 337 (S.D.N.Y. 1977) ................................ 29

United States v. Halper, 422 F.2d 432 (2d Cir. 1978)............................................ 15

United States v. Hoover, 246 F. 3d 1054 (7t Cir. 2001) ......................................... 6

United States v. Jackson, 621 F.2d 216 (5th Cir. 1980) ......................................... 16

United States v. Jass, 569 F.3d 47 (2d Cir. 2009)................................................. 6

United States v. Key, 725 F. 2d 1123(7th Cir. 1984) ............................................. 5

United States v. Levy, 731 F.2d 997 (2d Cir. 1984)............................................... 16

United States v. Lewis, 482 F.2d 632, 643 (D.C. Cir. 1973).................................... 17

United States v. Lino, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *20-21 (S.D.N.Y. December 29, 2000)................................................................................................................ 13

United States v. Long, 917 F.2d 691, 702 (2d Cir. 1990)................................................ 28

United States v. Mejia, 545 F.3d 179 (2d Cir. 2008)...................................................... 28

United States v. Mosely, 450 F.2d 506 (5th Cir. 1971), cert. denied, 405 U.S. 975 (1972)......... 29

United States v. Oakar, 924 F. Supp. 232, 244 (D.D.C. 1996)........................................ 8

United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984)........................................... 7

United States v. Pickett, 746 F.2d 1129 (6th Cir. 1984 cert. denied, 469 U.S. 1226 (1985).......... 5

United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973) ......................................... 7

United States v. Santiago, 174 F. Supp. 2d 16, 42 (S.D.N.Y. 2009) ................................. 12

United States v. Schwartz, 790 F.2d 1059, 1062 (3d Cir. 1986) ..................................... 16

United States v. Scop, 846 F.2d 135, 139-43 (2d Cir. 1988).......................................... 28

United States v. Sherlock, 865 F. 2d 1069 (9th Cir. 1989) amended, 962 F. 2d 1349 (9th Cir. 1989)......................................................................................................... 5

United States v. Simmons, 678 F.2d 1042, 1050 (3d Cir. 1982) ..................................... 14

United States v. Solomon, 490 F. Supp. 373 (S.D.Ga. 1980)......................................... 16

United States v. Stevens, 935 F.2d 1360, 1400 (2d Cir. 1991)....................................... 28

United States v. Tanner, 279 F. Supp. 457, 475 (N.D.Ill. 1967) ..................................... 8

United States v. Taylor, 707 F. Supp. 696, 699 (S.D.N.Y. 1989) .................................. 13

United States v. VanWort, 887 F.2d 375 (2d Cir. 1989) .............................................. 8

United States v. Veltmann, 6 F.3d 1483 (11th Cir. 1993) .............................................. 4

United States v. White, 753 F. Supp. 432, 433-34 (D.Conn. 1990) ................................ 8

United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) ................................................ 18

Yearsain v. United States, 314 F.2d 881 (9th Cir. 1963)............................................... 7

**Statutes**

18 U.S.C. §§1425(a) ...................................................................................... 2

18 U.S.C. § 1451(e) ...................................................................................... 2

18 U.S.C. §§1955(a) ...................................................................................... 1

18 U.S.C. §§1956(a)(6)................................................................................... 2

18 U.S.C. §§1959(a)(6)................................................................................... 2

18 U.S.C. §§1959(b)(2).................................................................................. 2

18 U.S.C. §§2.............................................................................................. 1

18 U.S.C. §§373........................................................................................... 2

18 U.S.C. §§894(a)(1).................................................................................... 1

18 U.S.C. §1951(a) ...................................................................................... 1

18 U.S.C. §1961 ....................................................................................... 1, 2

18 U.S.C. §3551........................................................................................... 1

21 U.S.C. §§841(a)(1).................................................................................... 1

21 U.S.C. §§841(b)(1)(C)............................................................................... 1

21 U.S.C. §§841(b)(1)(E)(i)............................................................................. 1

28 U.S.C.§ 2071 ....................................................................................... 28

21 U.S.C. §841(b)(1)(E)(i)............................................................................... 1

21 U.S.C. §846............................................................................................ 1

**Other Authorities**

2 Weinstein, EVIDENCE ............................................................................................ 16

**Rules**

Fed. R. Crim. P. 16(a)(1)(c) ...................................................................................... 13
Fed. R. Crim. P. 16(a)(1)(E) ..................................................................................... 28
Fed. R. Crim. P. 7(f) .................................................................................................. 1
Fed. R. Evid. 403. ............................................................................................... 15, 17
Fed. R. Evid. 404(b) ........................................................................................ 1, 13, 15
Fed. R. Evid. 801(d)(2)(E) ......................................................................................... 8
Fed. R. Evid. Rule 702 .............................................................................................. 28
Federal Rule of Evidence 104(b) .............................................................................. 15
Federal Rule of Evidence 402 ................................................................................... 15
Federal Rules of Criminal Procedure, Rule 8 ............................................................ 3
FRCP Rule 14 ............................................................................................................. 3
Rule 7(f) of the Federal Rules of Criminal Procedure ............................................... 7

## <u>LIST OF EXHIBITS</u>

A.  Initial Indictment

B.  Superseding Indictment

C.  Co-Defendant Statements and Proposed Redactions

## PRELIMINARY STATEMENT

Defendant Qian Zheng respectfully submits this memorandum of law in support of his pretrial motions for an Order: (i) severing the trial of Mr. Zheng from those of his co-defendants pursuant to Bruton v. United States, 391 U.S. 123 (1968); (ii) requiring the government to provide a Bill of Particulars pursuant to Fed. R. Crim. P. 7(f); (iii) compelling the Government to reveal any evidence it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence sixty days prior to the commencement of trial; (iv) directing the pre-trial disclosure of all exculpatory and impeachment material; (v) directing the disclosure of interviewed individuals and any recorded notes of said interviews;  (vi) directing the Government to provide notice of any expert testimony they may seek to elicit at trial; (vii) compelling the Government to provide a witness list prior to trial; and (viii) permitting the Defendant to file additional motions which may arise from the requests made herein.

## STATEMENT OF FACTS

On or about December 15, 2015, Qian Zheng was arrested pursuant to a warrant and sealed indictment. A superseding indictment was subsequently voted in which Mr. Zheng has been charged with one count of Racketeering (18 U.S.C. §1961), one count of Conspiracy to Distribute Ketamine (21 U.S.C. §§841(b)(1)(E)(i) and 846, 18 U.S.C. §3551 *et seq.*), one count of Ketamine Distribution (21 U.S.C. §§841(a)(1) and 841(b)(1)(E)(i), 18 U.S.C. §§2 and 3551 *et seq.*), one count of Conspiracy to Distribute MDMA (21 U.S.C. §§841(b)(1)(C) and 846, 18 U.S.C. §3551 *et seq.*), one count of MDMA Distribution (21 U.S.C. §§841(a)(1) and 841(b)(1)(C), 18 U.S.C. §§2 and 3551 *et seq.*), two counts of Extortion Conspiracy (18 U.S.C. §§894(a)(1) and 3551 *et seq.*), one count of engaging in an Illegal Gambling Business (18 U.S.C. §§1955(a), 2 and 3551 *et seq.*), one count of Attempted Extortion (18 U.S.C. §1951(a), 2 and 3551  *et seq.*), two counts

1

of Solicitation to Commit Assault in Aid of Racketeering (18 U.S.C. §§373 and 3551 *et seq.*), two counts of Attempt to Commit Assault in Aid of Racketeering (18 U.S.C. §§1959(a)(6), 2 and 3551 *et seq.*), one count of Conspiracy to Commit Assault in Aid of Racketeering (18 U.S.C. §§1956(a)(6) and 3551 *et seq.*), and one count of Unlawful Procurement of Naturalization (8 U.S.C. 1451(e) and 18 U.S.C. §§1425(a) and 3551*et seq.*). (Annexed hereto and labeled **Exhibit A** is a copy of the initial indictment; Annexed hereto and labeled **Exhibit B** is a copy of the superseding indictment).

### *The Zheng Organization*

The Government has alleged that the defendant and co-defendants constituted an "enterprise" within the definition of the RICO laws. 18 U.S.C. §§1959(b)(2) and 1961(4). The Government has termed this "enterprise" the "Zheng Organization."[1] The Government alleges that the defendant and co-defendants operated this association in fact enterprise through a pattern of racketeering activity which included distribution of illegal drugs, illegal gambling, extortionate credit extensions and acts of violence. Several of Mr. Zheng's co-defendants have allegedly identified his photograph and made statements implicating him in this organization. Mr. Zheng has been alleged to be a senior member of the group referred to as "Dai Lo."[2]

The investigation of this matter relied heavily on the use of confidential sources who recorded several conversations during the course of the investigation. These confidential sources allegedly received narcotics from Mr. Zheng for personal consumption and distribution. Mr. Zheng is also alleged to have assisted one of these sources arrange for the beating of several individuals who owed money to one of his acquaintances.

---

[1] Future references to these terms will dispense with quotation marks for ease of reading. The defense does not imply any acceptance of these terms by this usage.

[2] As it appears that the parties are known to one another, we have not sought hearings on identification. We are unaware of any identification procedures involving parties who were not known to each other.

Mr. Zheng has been incarcerated since his arrest. The matter is currently pending before the Honorable Carol B. Amon.

## ARGUMENT

## POINT I

### The Trial of Qian Zheng Should Be Severed From the Trials of Guifu Gu and Xue Jiang Gao, Or, In the Alternative, More Thorough Redaction Must Be Ordered.

Several of Mr. Zheng's co-defendants have made statements to the FBI implicating Mr. Zheng as a leader of the alleged organization. While the Government has proposed redactions to these statements, such redactions are insufficient to shield Mr. Zheng from irreparable prejudice. (Please see Statements of Co-Defendants and Proposed Redactions, **Exhibit C**.) As such the trials must be severed pursuant to Bruton v. United States, 391 U.S. 123 (1968).

Federal Rules of Criminal Procedure, Rule 8 provides for the joinder of defendants if said defendants are alleged to have participated in "the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." However, pursuant to FRCP Rule 14, "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever or other relief justice requires."

The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant to be confronted with the witnesses against him. Where two or more defendants are tried jointly, the pre-trial confession of one of them that implicates the other is not admissible against the others unless the confessing defendant waives his rights under the Fifth Amendment to the United States Constitution so as to permit cross-examination. Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714 (1987). Additionally, when a non-testifying co-defendant's confession

3

incriminating another defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Id.; Bruton. The significance of this issue of constitutional dimension was succinctly described in Bruton; "[t]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a co-defendant, who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect..." 391 U.S. at 135-36. As to the issue of "interlocking" confessions, the Cruz Court found that said confessions bear a "positively inverse relationship to devastation" and, as such, are inadmissible at a joint trial. Id. at 1719.

The Circuits have followed Bruton and Cruz in order to ensure a defendant's right to a fair trial by excluding confessions of co-defendants and granting severances in cases in which the government seeks to introduce confessions of defendants which implicate co-defendants.

In United States v. Brown, 699 F.2d 585 (2d Cir. 1983), the Second Circuit reversed and ordered a new trial in a case in which the government, in cross-examining a testifying defendant, used his confession to implicate a non-testifying co-defendant. Id. at 592-93; See also; United States v. Danzey, 594 F.2d 905, 917-918 (2d Cir.), cert. denied, 441 U.S. 951, 99 S.Ct. 2179 (1979)) [spill-over effect from improperly redacted inculpatory statement of defendant which substituted "blank" for name of co-defendant required a new trial]; United States v. Veltmann, 6 F.3d 1483 (11th Cir. 1993); United States v. Sherlock, 865 F. 2d 1069 (9th Cir. 1989) amended,

962 F. 2d 1349 (9th Cir. 1989), cert. denied, 506 U.S. 958 (1992); United States v. Pickett, 746 F.2d 1129 (6th Cir. 1984 cert. denied, 469 U.S. 1226 (1985); United States v. Key, 725 F. 2d 1123 (7th Cir. 1984).

The Government has proposed redactions of the statements of co-defendants Kai Huan Huang, Guifu Gu, and Xue Jiang Gao.[3] (Please see Proposed Redactions, **Exhibit C**.) Only the redaction proposed for the statement of Kai Huan Huang sufficiently addresses these concerns. Those proposed for Guifu Gu and Xue Jiang Gao do not. Accordingly, the trial of Mr. Zheng must be severed from those of Guifu Gu and Xue Jiang Gao. The proposed redaction of Huang's statement will leave only a general description of an individual who owned a gambling parlor and provided him with narcotics. In contrast, the statements of Gao and Gu will leave detailed descriptions of the activities of someone who will be referred to as their "Dai Lo." There will likely be confidential witnesses who will testify that Mr. Zheng was referred to as "Dai Lo," as well as testimony that only a group's leader is referred to as "Dai Lo." While not equivalent to including the personal nickname of a defendant in place of his legal name, a clear violation of the redaction requirement, this reference to the "Dai Lo," a term which will be specifically and solely attributed to Mr. Zheng throughout the trial, will render it impossible for a jury to follow any instruction that it not consider these statements against him. We ask the Court to note that this will be done not only though evidence to be presented, but through the indictment itself, which alleges that these individuals are part of the "Zheng Organization."

While the Second Circuit has held that "[w]here a jury must look to other trial evidence to link a defendant to a redacted confession, the Confrontation Clause "calculus changes" sufficiently to remove the statement from Bruton's protective rule" it also recognizes that "[w]hat Bruton and

---

[3] Xue Jiang Gao is also known as "Xue Zhang." Kai Huan Huang is also known as "Shen Shen."

its progeny demand is a redaction and substitution adequate to remove the "overwhelming probability" that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant." United States v. Jass, 569 F.3d 47 (2d Cir. 2009). While that "overwhelming probability" exists in this case, even when viewed in isolation for their likely impact on a jury, these statements, if admitted, will surely result in the denial of a fair trial for Mr. Zheng.

Notably, in the Jass decision, the Second Circuit favorably cited United States v. Hoover, 246 F. 3d 1054 (7t Cir. 2001), a case in which the court determined that the replacement of the defendants' names with their roles in the organization, "incarcerated leader" and "unincarcerated leader" respectively, made it entirely clear to whom the co-defendant statements referred. "To adopt a four-corners rule would be to undo Bruton in practical effect. An alteration that uses an open-ended reference such as "inner circle" at least avoids a one-to-one correspondence between the confession and easily identified figures sitting at the defense table. "Incarcerated leader" and "unincarcerated leader" are just the sort of symbols that the majority in Gray had in mind. If the prosecutors wanted to use Howard's confession yet avoid a severance, they had to make substantially greater alterations to avoid the obvious pointers." Id. at 1059. We respectfully submit that the substitution of "Dai Lo" for Mr. Zheng's name or nickname is a similarly insufficient redaction. There will be no question in a reasonable juror's mind that these statements refer to Mr. Zheng.

We will continue to consult with the government in an effort to devise constitutionally permissible redactions. In the event these efforts are unsuccessful, we will seek the Court's intervention.

## POINT II

### The Government Should Provide a Bill of Particulars

The purposes behind a Bill of Particulars are clearly set forth both by statute and precedent. Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him. This enables him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).

The Second Circuit has made clear that "the principal function of a bill of particulars is to apprise a defendant of the essential facts of the crime for which he has been indicted, especially in the instances where the indictment does little more than track the language of the statute allegedly violated." United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973).

A Bill of Particulars is not designed to elicit "evidentiary" material nor may it compel the government to reveal its entire case, or all of the evidence it hopes to adduce at trial. Nevertheless, the defendant is entitled to know the theory of the government's case, Yearsain v. United States, 314 F.2d 881 (9th Cir. 1963), and it is no impediment to the granting of a Bill of Particulars that such information is "evidentiary" where the requested information is necessary to the preparation of the defendant's defense. United States v. Crisona, 271 F. Supp. 150 (S.D.N.Y. 1967); United States v. Covelli, 210 F. Supp. 589 (N.D. Ill. 1962). While a decision as to whether or not to grant a motion for a bill of particulars rests in the discretion of the trial court; United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984), that discretion is not unlimited. The Second Circuit has found the failure to grant such a motion can be reversible error. See United States v. Bortnovsky, supra.

Conspiracy charges are notoriously difficult to defend against because of the uncertainty

in determining who is (or is not) a member, or who was (or was not) a member at a particular time. There is no requirement that a defendant conspire directly with all co-conspirators, that he be aware of all of the acts committed by co-conspirators, or that he even know the identities of all co-conspirators. United States v. VanWort, 887 F.2d 375 (2d Cir. 1989). He can, however, be held liable for substantive crimes committed by others while he was a member, United States v. Bruno, 873 F.2d 555 (2d Cir. 1989), and can be bound by the declarations of others made while they are members. Fed. R. Evid. 801(d)(2)(E). For these reasons, the Courts generally require the government to provide a Bill of Particulars identifying those persons who are claimed to be co-conspirators, to the extent they are known to the government. See United States v. Oakar, 924 F. Supp. 232, 244 (D.D.C. 1996); United States v. White, 753 F. Supp. 432, 433-34 (D.Conn. 1990); United States v. Feola, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), aff'd 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989); United States v. Burgio, 279F. Supp. 843, 846 (S.D.N.Y. 1968); United States v. Tanner, 279 F. Supp. 457, 475 (N.D.Ill. 1967).

Indictments charging RICO pose special concerns related to fair and adequate notice to the defense even beyond those charging ordinary conspiracies. "With the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charges to a degree that might not be necessary in the prosecution of crimes of a more limited scope." United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988). Notice concerns are exacerbated when the defendant is charged with the crime of extortion, as extortion requires proof of specific intent. See United States v. Abelis, 146 F.3d 73, 82 (2d Cir. 1998) (defendant must create or instill fear..." with the specific purpose of inducing another to part with his or her property." In Davidoff, the Second Circuit reversed the defendant's extortion and RICO

convictions on a finding that the district court abused its discretion by denying a bill of particulars identifying "at least the victims of discrete extortionate schemes that the prosecution intended to prove." 845 F.2d at 1154.

Based upon the foregoing, the defense herein respectfully submits that we are entitled to particulars of the extortions that the government will be required to prove at trial and that the government should be directed to furnish to the defense the names of the victims allegedly extorted in each extortion count, the nature of the force, violence or fear which was contemplated or used to obtain the victim's property, precisely which defendant applied the force or instilled the fear, and the nature of the property sought to be obtained by the defendant. See United States v. Aliperti 867 F. Supp. 142 (E.D.N.Y. 1994) (defendants entitled to particularization of the property obtained and official acts defendants agreed to perform as *quid pro quo*).

As the Court is aware, in this matter the Government has alleged a RICO conspiracy stretching from January 2007 through September 2015 and involving several indicted and unindicted co-conspirators. As a preliminary matter, the government should be directed to set forth how each of the racketeering acts relate to one another and the enterprise. See United States v. Bruno, 383 F.3d 65 (2004). This indictment charges a potpourri of otherwise diverse acts. They do not appear to be related to each other in many instances or the alleged enterprise. For example, the conversations relating to the narcotics in this case appear to center around personal use at clubs. The assault solicitations appear to have been precipitated by unrelated transactions having nothing to do with the alleged "enterprise." The government must provide its basis for both horizontal and vertical relatedness of these acts to the alleged enterprise.

To date the government has provided the defense with numerous reports which detail the crimes charged and the investigation concerning the alleged enterprise commencing in 2013. Our

9

additional requests seek, *inter alia*:

    a.   when in fact the "enterprise" within the statutory framework actually commenced and the facts upon which this temporal benchmark is predicated;

    b.   the identities and roles of the defendant's alleged accomplices;

    c.   the identities and roles of any unindicted co-conspirators; and

    d.   the specific conduct attributable to them to support their inclusion in the enterprise.

The defense also requests that the following specific issues be addressed with amplified particularity:

In Count One, Racketeering Act One, Sub-act A and Count Two Mr. Zheng is accused of participating in a ketamine distribution conspiracy running from January of 2010 through June of 2015 also involving Xue Jiang Gao. In Count One, Racketeering Act One, Sub-act B, Mr. Zheng is accused of distributing ketamine together with Xue Jiang Gao from January of 2007 through June of 2015. Count Three alleges that Mr. Zheng participated in ketamine distribution from January of 2007 through June of 2015 together with Guifu Gao and Xue Jiang Gao. The Government should particularize whether these allegations refer to a single course of conduct by Mr. Zheng or several separate ones, as well as whether Mr. Zheng is alleged to have participated as a principal or accomplice.

With respect to Count One, Racketeering Act Three, Sub-act A and Count 8, the Government should particularize what "extension of credit" within the meaning of 18 U.S.C. §894 was being collected and how said credit was extended with a threat of force or injury in the event it was not paid back.

With respect to the extortion of a gambling parlor charged in Count One, Racketeering Act Five and Counts Ten and Eleven, the Government should particularize what role Mr. Zheng is

alleged to have played. Based on the statements provided to the defense to date, Mr. Zheng does not appear to have been involved in these actions in any way. (Please see Statements of Kai Huan Huang and Xue Jiang Gao, **Exhibit C**.)

With respect to the Solicitation of Assault and Attempted Assault in Aid of Racketeering charged in Counts Twelve and Thirteen as well as the Solicitation of Assault, Conspiracy to Assault and Attempted Assault in Aid of Racketeering charged in Counts Fourteen through Sixteen, the Government should particularize in what way the assault was connected to a purpose of increasing or maintaining any individual's standing in the alleged organization, or what item of pecuniary value was provided to any individual. The discovery heretofore provided describes at best, one individual simply asking Mr. Zheng for assistance in collecting a debt entirely unrelated to the alleged enterprise and without any reference to the enterprise, even in an informal manner.

With respect to Count One, Racketeering Act One, and Counts Two through Five, all charging that Mr. Zheng conspired to and did distribute MDMA and ketamine, the Government has provided only broad time frames and limited information regarding alleged co-participants. The time frames of these counts do not line up with each other and the alleged participants vary. For example, Racketeering Act One, Sub-act A and Count Two both charge a ketamine distribution conspiracy involving Mr. Zheng and Xue Jiang Gao. Count Three alleges the distribution of ketamine by Mr. Zheng, Xue Jing Gao, and Guifu Gao over the identical time period. All of these counts allege that unnamed others were involved in the acts. Similarly, Count Four charges Mr. Zheng with conspiracy to distribute MDMA, but names none of his alleged co-conspirators. As the indictment stands, there is no way to determine the exact nature of the alleged acts related to narcotics distribution. Mr. Zheng will be seriously hampered in his ability to prepare for trial, and it will be impossible for him to interpose a claim of double jeopardy should some of these counts

reach unanimous verdicts but others be required to be retried. With respect to each of these counts, the Government should particularize:

    a) Whether Mr. Zheng is alleged to have participated as a principal or accomplice;

    b) The quantities of illegal drugs Mr. Zheng is alleged to have transacted in;

    c) The dates or approximate dates that any narcotics transactions involving Mr. Zheng were actually committed;

    d) Which alleged co-participants were involved in each count;

    e) If Mr. Zheng is alleged to have participated through a "continuing course of conduct", what the nature of that conduct was;

    f) With regard to the narcotics counts, the government should state whether its theory of possession revolves around the personal use of these drugs amongst the charged defendants and others; and

    g) Finally, with respect to all acts alleged, the government should be directed to provide how, if at all, Mr. Zheng sought or received any benefit for the acts attributable to him. The government has charged Mr. Zheng as the leader of an organization who was allegedly directing activities of others. We are unaware, based upon the voluminous discovery provided, of payments or any form of remuneration being given to Mr. Zheng.

Courts routinely order such disclosure – especially given the open-ended nature of the charged conspiracy. See, e.g., United States v. Santiago, 174 F. Supp. 2d 16, 42 (S.D.N.Y. 2009) (ordering particulars in charged conspiracy including how defendant was alleged to have participated in conspiracy, approximate dates and times of that participation, and identities of any unindicted co-conspirators with whom defendant participated in conspiracy); United States v.

Lino, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *20-21 (S.D.N.Y. December 29, 2000) ("Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts."); United States v. Taylor, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); United States v. Feola, 651 F. Supp. 1068, 133 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989), cert denied, 493 U.S. 834 (1989) (both directing the government to provide the names of unindicted co-conspirators in a bill of particulars).

The defendant respectfully asks this Court to balance the equities in this case and exercise its discretion to require the government to file a bill of particulars as requested herein. The defendant submits that there is no conceivable prejudice to the government from having to specify the limited particulars delineated above.

## POINT III

## The Government Should Be Required to Provide 404(b) Evidence Sixty Days Before Trial

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). Given the inherent prejudice in such testimony, Federal Rule of Evidence 404(b) requires:

> [u]pon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial, if the Court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The defendant respectfully requests that the Government be compelled, sixty days prior to trial, to provide the defense with any prior or similar act evidence it intends to introduce at trial.

This request is made pursuant to Fed. R. Crim. P. 16(a)(1)(c) and, as such, we ask that the government be directed to disclose any and all acts which the government will seek to introduce

13

pursuant to Rule 404(b) in such time so as to permit sufficient time for the defense to move to preclude the introduction of such evidence. We ask that this notice be provided well in advance of trial as it is likely that some such acts will date back several months or years and in order for the defense to effectively investigate and posit cogent and meritorious arguments in support of preclusion, sufficient notice is required. Additionally, in some circumstances the evidence sought to be admitted would warrant consideration of severance of defendants should the government move to join any indictments. We respectfully submit that this evidence is discoverable pursuant to Rule 16 as it is "material to the preparation of the defense," and much of it constitutes evidence that the government will introduce in its case-in-chief.

Such notice should include the nature of this evidence, the pertinent witnesses, any supporting documentation, and the legal theory of admissibility to be relied upon by the Government. Such a procedure is necessary to enable the accused to file appropriate motions *in limine* and to allow this Court to make a considered pretrial determination of the admissibility of any such evidence proffered by the Government. Moreover, such pretrial notice would provide the defense an opportunity to challenge the evidence on its merits and/or discuss with the Government the possibility of stipulating to such evidence in a manner which ameliorates any ensuing prejudice from the introduction thereof.

Like the majority of other Circuits, the Second Circuit follows an inclusionary approach to the admission of 404(b) evidence. Under this inclusionary approach, evidence of other crimes is admissible for appropriate purposes other than to show a defendant's criminal propensity. See, e.g., United States v. Simmons, 678 F.2d 1042, 1050 (3d Cir. 1982). In Huddleston v. United States, 485 U.S. 681 (1988), the United States Supreme Court overruled the Second Circuit's then-established requirement that similar act evidence could be admitted only if the government

14

established, by a preponderance of evidence, that the accused committed the act. The Huddleston Court held that the government need only present evidence which would permit a jury to "reasonably conclude" that the defendant committed the act. A defendant's ability to fully and articulately contest similar-act evidence is therefore clearly "material" to the preparation of the defense in light of the relaxed burden upon the government and the inclusionary approach to this evidence. Our need for the earliest possible production of this proposed evidence is also amplified by the limited burden imposed upon the government.

An "inclusionary view of the rule regarding other crimes and similar evidence . . . is by no means [a] view that such evidence is either presumed relevant or automatically admissible. Its relevance to an issue truly in dispute must be demonstrated." United States v. Halper, 422 F.2d 432 (2d Cir. 1978). In Huddleston v. United States, supra, the Supreme Court established a four-pronged test for admission of uncharged crimes evidence: the evidence must be: (1) offered for a proper purpose consistent with Rule 404(b); (2) it must satisfy Federal Rule of Evidence 402 as enforced by Federal Rule of Evidence 104(b); (3) the probative value of the evidence must outweigh its prejudicial impact, and; (4) a limiting instruction may be given by the court which would properly guide the jury in the manner in which the evidence sought for introduction is to be considered.

While we understand that Rule 404(b) contains a non-exhaustive list of purposes for which other act or crime evidence may be admitted, the government must explain in detail the purposes for which the evidence is sought to be admitted. Only with such information can a Court reasonably decide whether the evidence falls within the ambit of permissible purposes to warrant admission of this evidence. Once the Court determines that the evidence is admissible, it must then balance the probative value of the evidence against its prejudicial impact under Fed. R. Evid. 403. United

15

States v. Levy, 731 F.2d 997 (2d Cir. 1984). In performing the balancing analysis required by Rule 403, the trial court must consider a variety of factors including the obvious prejudice which arises from the introduction of evidence suggesting that the defendant has engaged in other criminal activity in addition to the offenses with which he is charged.  Such evidence implies that since he committed the other crimes, the defendant must also be guilty of the crimes for which he is on trial. United States v. Schwartz, 790 F.2d 1059, 1062 (3d Cir. 1986); see also Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) ("A classic example of unfair prejudice is a jury's conclusion . . . that since the defendant committed so many other crimes, he must have committed this one too."). "Other crimes, wrongs or acts" evidence may also tend to unfairly excite the jurors' emotions against the defendant. United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  Additionally, evidence of other crimes may confuse or mislead the jury. The danger of this multifaceted prejudice pervading the fact finders' consideration must be scrupulously guarded against to prevent convictions based on propensity and not the evidence of the crime charged.  As such, early disclosure and an opportunity to litigate the admissibility of the proffered evidence is necessary to facilitate a fair and just determination.

Although Rule 404 is silent on when and how the admissibility of "other crimes, wrongs, or acts" is to be determined, a number of courts and commentators have recommended that the government provide pretrial notice of the "other crimes, wrongs, or acts" it intends to offer at trial and that the Court conduct a hearing to determine the admissibility of this evidence.  United States v. Foskey, 636 F.2d 517, 526 n.8 (D.C. Cir. 1980); United States v. Jackson, 621 F.2d 216 (5th Cir. 1980); United States v. Fischback and Moore, Inc., 576 F. Supp. 1384, 1397-98 (W.D. Pa. 1983); United States v. Solomon, 490 F. Supp. 373 (S.D.Ga. 1980); 2 Weinstein, EVIDENCE, 404[19], p. 404-158 (1980).

Clearly, the highly fact-specific analysis a court must perform requires that the defendant not only have notice of the "other crimes, wrongs, or acts" evidence which the government intends to offer against him, but the opportunity for a meaningful hearing on the issue of admissibility. Indeed, the trial court's discretionary function is ultimately aborted if both the defendant and the court are to confront the issue of admissibility of "other crimes, wrongs, or acts," evidence on the eve of or in the heat of trial. United States v. Lewis, 482 F.2d 632, 643 (D.C. Cir. 1973). Thus, the defendant and the court should have sufficient notice and opportunity to perform the delicate analysis required by Rule 403.

Based upon the foregoing, this Court should require the government to disclose "other crimes, wrongs, or acts" evidence it intends to use against this defendant as well as against any other co-defendant.  This disclosure must be made well in advance of trial to enable the allegations to be sufficiently and effectively investigated and contested. In addition, this Court should hold a hearing prior to trial to resolve all legal and factual issues regarding the admissibility of such evidence.

## POINT IV

### The Government Should Disclose All Exculpatory and Impeachment Material Forthwith.

A prosecutor has a constitutional duty to disclose material, exculpatory evidence to the defense, regardless of whether defense counsel makes a specific request.  United States v. Bagley, 473 U.S. 667, 682 (1985)**Error! Bookmark not defined.**; Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty extends not only to information relevant to guilt, but also to evidence that would tend to impeach the prosecution's witnesses. Bagley, 473 U.S. at 676-77 ("When the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within the general rule of Brady.") (internal quotation marks and brackets

17

omitted); Giglio v. United States, 405 U.S. 150, 154 (1972).

A breach of that duty violates due process when: (1) the prosecution suppresses impeachment evidence that was actually or constructively in its possession, regardless of the good or bad faith of the prosecutor; and (2) the suppressed evidence was material. A defendant does not need to show that the evidence, if disclosed, would have resulted in his acquittal; rather, he needs to show only that the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434-35 (1995); Bagley, 473 U.S. at 682 (finding that evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome").

Impeachment evidence has been deemed to fall within the standard of materiality for Brady purposes. United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) ("Evidence of impeachment is material . . . where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.") (internal quotation marks omitted).

Even if the prosecutor is not directly aware of the evidence sought herein, a Brady/Giglio violation can still occur if the evidence was in the prosecutor's constructive possession. For example, in Kyles v. Whitley, *supra*, the Supreme Court held that state prosecutors have a duty to disclose impeachment evidence known to the police, even if the prosecutors themselves were not actually aware of the information. The Court stated:

> . . . the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such [undisclosed favorable] evidence and make disclosure when the point of "reasonable probability" is reached. ***This in turn means that the individual prosecutor has a duty to learn of any***

> *favorable evidence known to others acting on the government's behalf in the case, including the police.*

Id. at 437 (emphasis added).

It is clear that the law in this Circuit is that such material must be provided to the defense "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001). This, of course, begs the essential question, since "[t]he linking of the scope of the disclosure obligation with the remedy for its breach creates both a responsibility and a problem for the prosecutor." Id. As such, it would appear that disclosure of such information at the earliest feasible juncture relieves the prosecutor of having to predict both the outcome of the trial and the relative impact that late disclosure might have on that result. We therefore maintain that all exculpatory and impeachment material as detailed herein be disclosed forthwith.

Based on the foregoing, request is made for an Order directing the pre-trial disclosure of all exculpatory and impeachment material, including but not limited to:

a.   Any and all information and/or material which tends to exonerate the accused, QIAN ZHENG, or which tends to show that he did not knowingly commit any offenses alleged in the Indictment. This request includes all evidence which tends to show that the defendant is not responsible for the conduct, in whole or in part, alleged by the government in its accusatory instruments and other government representations. This request includes complete and partial vindication;

b.   Any and all evidence which tends to impeach the credibility of any prospective Government witness, including but not limited to:

(1)   Any and all records or information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to relevant "rap sheets" or records of departmental infractions or sustained acts of misconduct of each witness the prosecutor intends to call at trial;

(2)   Any and all records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts or

19

bad acts of any witness the prosecutor intends to call at trial;

(3)     Any and all allegations of prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should have reason to know;

(4)     Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness, or on behalf of a relative of any such witness the Government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness, or relative of any witness, at any future time. Such "consideration" refers to anything which arguably could be of value or use to a witness, or relative of the witness, including but not limited to: formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, disciplinary or other matter involving the state or federal government or agency thereof, any association (including legal association), any other authority, or other parties; civil, criminal or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees; provisions of food, clothing, transportation, legal services, alcohol or drug related rehabilitation services or other benefits; placement in a "witness protection" program, informer status of the witness;  letters to anyone advising the recipient of the witness's or the relative's cooperation; recommendations concerning licensing, certification or registration (including liquor licenses and the license to practice law); recommendations concerning federal aid or benefits; promises to take affirmative action to help the status of the witness, or relative of the witness, in a profession, business, or employment, or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness, or a relative of the witness; and anything else which arguably could reveal any interest, motive or bias of the witness in favor of the prosecution or against Ryan Quashie or which could act as an inducement to testify or to color his testimony;

20

(5)     Any and all statements formal and informal, oral or written by the prosecution, it's agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or outcome of any Government action state or federal, civil or criminal or licensing (including liquor licenses and the license to practice law) matters against the witness, or anyone related by blood or marriage to the witness;

(6)     Any statements read or made by the Government to the departments of pre-trial services or probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

(7)     Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, or relative of such witness, and the state of federal government, any agency thereof or any regulatory body or association or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

(8)     A list of any and all requests, demands, or complaints made of the Government by any witness which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action in his behalf or on behalf of a relative to such witness (regardless of whether or not the Government has agreed to provide any favorable action);

(9)     With respect to each witness the Government intends to call at trial, or any member of the immediate family of any such witness, disclose copies of all indictments, complaints, or informations filed against such person by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and

21

state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken.  If the Government does not have copies of all indictments, complaints, or proceedings, state the dates and places of arrests, hearings, indictments, and informations, the charges brought, and the disposition of those charges or matters so far as it is known to the Government;

(10)    With respect to each witness the Government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have not or will not be brought, because the witness is cooperating with or has cooperated with the Government, or for any reason.  Include copies of all memoranda of understanding between the Government and its witnesses, whether by way of a letter to the attorney for a witness or otherwise;

(11)    Any material not otherwise listed which reflects or evidences the motivation of any witness either to cooperate with the Government or any bias or hostility against Ryan Quashie; the existence and identification of each occasion on which a witness had testified before any court, grand jury, administrative, regulatory, disciplinary body or other association, or otherwise officially narrated in the investigation of this case, the indictment of the facts of this case, and any testimony, statements or documents given by the witness regarding same;

(12)    All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings (including licensing for liquor sales or law practice) of which the Government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any person has been given, regarding the misconduct, criminal acts or bad acts of any witness the Government intends to call at the trial of this action;

(13)    Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns,

22

made or executed by any potential prosecution witness in connection with this action or related to this action, which he prosecution knows or through the exercise of reasonable diligence should have reason to know, is false;

(14)   Copies of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness the prosecutor intends to call at trial which may arguably affect the witness's credibility or his ability to perceive, state or recall events;

(15)   All documents and other evidence regarding drug or alcohol usage and/or dependency by any individual the Government intends to call as witness at trial, including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program;

(16)   Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

(17)   Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness, whether or not such request was granted;

(18)   Copies of any and all records of law enforcement agencies reflecting intra- departmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

(19)   Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards, or recognition or any kind, or requests for any commendations, awards or recognition of any kind made to or by any Government agent or law enforcement officer for any work, action or conduct in connection with the investigation and prosecution of this case or any related case; and

(20)   The same records and information requested in items "(1)" through "(19)" with respect to each ***non-witness declarant*** whose statements will be offered in evidence at trial.

c.     The identifying information for any written or oral statements made by any

23

            person with knowledge and information concerning the events charged in the Indictment and whose version of the same events is contrary to, or non-supportive of, the accusations set forth in the Indictment.

d.      The name and address of any person and any written or oral statement which the Government reasonably believes has information helpful to the preparation of the defense and;

e.      The name and address of any witness to any offense or offenses charged in the Indictment that have made any written or oral statement whom the Government does not intend to call as a witness in this case.

## POINT V

### Disclosure of Statements of Interviewed Individuals as Brady Material

The government has provided Rule 16 discovery materials to the defense in this case. Upon information and belief, a major portion of the government's proof at trial will consist of the testimony of cooperators and confidential informants. Upon information and belief, the government has interviewed several individuals in connection with the investigation of the charges herein and these individuals are informants who have entered into agreements with the government in exchange for their information and potential trial testimony. Additionally, it is appears that the government may have interviewed several additional witnesses to the crimes charged.

Upon further information and belief, these individuals may have made statements which are contradictory or inconsistent with statements of other individuals and contradictory or inconsistent with the theory of the government's case against this defendant as set forth in the Indictment.  As such, the Mr. Zheng moves, pursuant to Kyles v. Whitley, 514 U.S. 419 (1995), for the production of (1) any contradictory or inconsistent statements made to any law enforcement personnel/prosecutors by any individual(s), regardless of whether the government intends to call those individuals in its direct case; (2) any evidence that would tend to inculpate someone other than Mr. Zheng in any count in the Indictment and/or overt act; and (3) or any evidence which is

24

inconsistent with the theory of the government's case, as set forth in its Indictment, as it pertains to the specific role or activities of Qian Zheng. The defendant requests the production of these statements or evidence, irrespective of whether the government intends to call the individual cooperator(s) or potential codefendant(s) as a witness.

The Kyles decision involved a New Orleans, Louisiana homicide prosecution where the police withheld from the prosecutor inconsistent statements of its witnesses and other evidence tending to implicate an individual other than the defendant. When the defense filed a detailed pre-trial motion for the disclosure of Brady material, the prosecution filed the routine response that no exculpatory evidence existed. After a jury was unable to reach a verdict in the first trial, the defendant was convicted on re-trial and was sentenced to death. It was during the post judgment proceedings that the defendant discovered the existence of overwhelming exculpatory evidence in the police files.

When the case reached the United States Supreme Court, the Court determined that a Brady violation had been committed when the Louisiana state prosecutor suppressed a series of inconsistent and contradictory statements made by its main informant and other civilian eyewitnesses concerning physical evidence seized and the identification of the defendant as a participant. Although the opinion in Kyles is a fact-based analysis of whether there was, in fact, a "reasonable probability" that the suppressed statements would have led to a different result by the jury, the Court took the opportunity to address the prosecutor's affirmative obligations under Brady. It is these obligations we invoke herein.

In Kyles, the Louisiana state prosecutor argued that it should not be held accountable under both Bagley and Brady for evidence known "only" to the police investigators and not known to the prosecutor. Justice Souter specifically rejected this narrow view of prosecutorial responsibility:

25

> [A]ny argument for excusing a prosecutor from
> disclosing what he does not happen to know about
> boils down to a plea to substitute the police for the
> prosecutor, and even for the courts themselves, as the
> final arbiters of the government's obligation to ensure
> a fair trial.

Kyles v. Whitley, supra. The Court thus concluded that the "prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). Justice Souter made clear that "procedures and regulations" can and must be established to ensure the communication of exculpatory evidence between police investigator and prosecutor, so that the prosecutor can meet its Brady obligations.

We submit that the government has an affirmative duty to specifically inquire of each investigating officer whether he or she is aware of any exculpatory information. Justice Souter was confident that the "prudent prosecutor will resolve doubtful questions in favor of disclosure." Id. at 509 (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)).

Typically, law enforcement conducts several interviews with informants, some of whom are not necessarily arrested or brought in to speak directly with prosecutors. Their information, however, is still relied upon and used in the investigation and forms the partial basis for the prosecutions which follow. Any statements which fall within the doctrines enunciated in Brady, Giglio, and Kyles must be communicated to the government by law enforcement and provided to the defense and it is the duty of the government to affirmatively inquire as to the existence of any such information.

As stated above, the defendant is entitled to the disclosure, whether or not the government intends to call the individuals as witnesses. In this regard, the Kyles Court reasoned that the defendant had the right to call the informant as an adverse witness and examine on the

26

inconsistencies, question the investigating police officers on their knowledge of the inconsistent statements, or use them to attack the reliability of the investigation itself.  Surely the government cannot ignore their constitutional obligations by simply electing to not call a witness who possesses exculpatory information. We request that these rights, of constitutional dimension, be fully accorded to Qian Zheng in this matter.

## POINT VI

### The Government Should Be Directed to Provide Notice of Any Expert Testimony that it May Seek to Elicit at Trial

To the extent that any expert is permitted to testify in this case, it is respectfully asserted that this Court should direct the government to disclose to defense counsel the name and address of each expert, a summary of his/her anticipated testimony, and the reports, studies or other data on which such expert testimony will rely. Timely disclosure of this information is needed to enable counsel to file a motion *in limine* prior to trial to properly restrict the scope and extent of the proposed testimony. Absent such disclosure, the witness will be free to say anything, claim the source is some confidential government document or witness, without counsel effectively confronting this testimony.

To this end, the government is barred from using experts solely to bolster the credibility of the government's fact witnesses by mirroring their version of events. United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992). In particular, the Cruz court condemned the technique of having an expert state that a given set of facts is consistent with criminal behavior and then arguing that the witness's version of events is consistent with an expert's description of patterns of criminal conduct. Id. Rather, the expert's testimony must deal with operations which have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact witnesses by mirroring their version of events.

27

Id.; see also United States v. Castillo, 924 F.2d 1227, 1231 (2d Cir. 1991); United States v. Scop, 846 F.2d 135, 139-43 (2d Cir. 1988).

Further, any expert called by the government should, pursuant to Fed. R. Evid. Rule 702, deal only with issues that are beyond the knowledge or understanding of an average juror. Cruz, 981 F.2d at 662; United States v. Stevens, 935 F.2d 1360, 1400 (2d Cir. 1991) (holding that expert testimony was properly barred where it would have pitched to the common sense of the jury). It is patently improper for an expert witness to merely parrot the testimony of other witnesses with respect to information which is certainly not beyond the ken of the average juror. See United States v. Long, 917 F.2d 691, 702 (2d Cir. 1990); see also United States v. Mejia, 545 F.3d 179 (2d Cir. 2008).

The United States Supreme Court, pursuant to the rule-making authority granted by 28 U.S.C.§ 2071, et seq., promulgated amendments to the Federal Rules of Criminal Procedure, effective December 31, 1993. One of the Rules which was amended by the Court was Rule 16(a)(1)(E). That rule provides:

> (E) EXPERT WITNESSES. At the defendant's requests, the government shall disclose to the defendant a written summary of testimony the government intends to use under *Rules702*, *703*, or *705* of the Federal Rules of Evidence during its case in chief at trial...The summary...shall describe the witnesses' opinions, the basis and the reasons for those opinions and the witnesses' qualifications.

Fed. R. Crim. P. 16(a)(1)(E). The rule permits the opposing party to evaluate, prior to trial, whether the proposed witness meets the qualifications of an expert within the meaning of the Federal Rules of Evidence and whether the proposed testimony is admissible pursuant to the federal Rules of Evidence. In light of Rules 705 and 16, it is respectfully requested that the government be directed to provide the requested information to the defense.

## POINT VII

### The Government Should Be Compelled to Provide a Witness List Prior to Trial

The government should be directed to identify its prospective witnesses at a time which will enable the defense enough time to conduct a thorough investigation of these witnesses and prepare cross-examination.  It is respectfully submitted that, in the absence of any showing of a risk to any witness from disclosure, the defendant's request is not unreasonable.  While witness lists are frequently withheld in cases alleging organized crime activities, there has been no indication that the alleged organization maintains an ongoing capacity to exert its influence on the streets. In any event, the risks of providing this disclosure can be mitigated with protective orders. The production of a witness list will not be, in any way, prejudicial to the prosecution.  The Court's observation in United States v. Cannone, 528 F.2d 296, 301 (2d Cir. 1975) of the reasons for requiring disclosure of a witness list are clearly applicable here:

> The most potent argument for compulsory disclosure of the identity of the prosecution's witnesses is that, without the benefit of such disclosure, the defense may be substantially hampered in its preparation for trial . . . . Although continuances, which tend to mitigate the detrimental effects of unpreparedness, are sometimes obtainable, not only are they merely a partial solution to the problem of unpreparedness but, in addition, their prolongation of trials is of course costly to both the government and the defendant.

See also United States v. Mosely, 450 F.2d 506 (5th Cir. 1971), cert. denied, 405 U.S. 975 (1972); United States v. Goldman, 439 F. Supp. 337 (S.D.N.Y. 1977). As Judge Weinstein so cogently stated, "[p]recision, accuracy and fairness suffer under a system of trial by ambush." United States v. Gallo, 654 F. Supp. 463, 480 (E.D.N.Y. 1987).

We request that the government disclose a list of witnesses in a manner which will afford the defense sufficient time to prepare for trial of this matter.

## POINT VIII

### Permitting the Defendant to File Additional Motions Which May Arise from the Requests Made Herein

Given the nature of the instant motion, the defense respectfully requests the opportunity, if necessary, to file additional motions, based upon the resolution of the issues raised herein, including, but not limited to severance of defendants should the government choose to join any indictments.

## CONCLUSION

For the foregoing reasons, defendant Qian Zheng's motions should be granted in their entirety.


Dated:          New York, New York
                August 12, 2016


                                            Respectfully submitted,


                                            _____/s/_____

                                            James Kousouros, Esq.
                                            *Attorney for Qian Zheng*
                                            260 Madison Avenue, 22nd Floor
                                            New York, New York 10016
                                            Phone: (212) 532-1934
                                            Fax: (212) 532-1939
                                            James@Kousouroslaw.com

CC:     Honorable Judge Carol B. Amon

        Assistant United States Attorney Nadia Moore

        Qian Zheng